# 2004 DTA 127

RECEIVED
DEC 0 6 2004
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE CAROLINA**

RIO CONSTRUCTION CORP.
Recurrido

v.

MUNICIPIO DE CAROLINA
Peticionario

Núm. KLCE-2004-00427

San Juan, Puerto Rico, a 6 de agosto de 2004

Panel integrado por su Presidente, el Juez Miranda De Hostos, y los Jueces Colón Birriel y Escribano Medina

Colón Birriel, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

**I**

El peticionario Municipio de Carolina (el *"Municipio"*) solicita la revisión de una **Orden** emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (el *"TPI"*), el 9 de marzo de 2004, notificada el 12 de ese mes y año. El dictamen declaró **no ha lugar** su **Solicitud de Embargo en Cumplimiento de Sentencia** presentada el 1ro. de marzo. A continuación transcribimos, en lo pertinente, de la orden emitida:

*"2. Vista la "Solicitud de Embargo en Cumplimiento de Sentencia" radicada por la parte demandada el día 1ro. de marzo de 2004, el Tribunal dispuso lo siguiente:*

*No ha lugar; rectifíquense los cómputos conforme las determinaciones del Tribunal en cuanto al pago de principal e intereses por sentencia, así como el abono de lo pagado a esta fecha y entonces, así rectificado, de no haberse efectuado el pago oportunamente, ordenaríamos el embargo."*

El 19 de marzo de 2004, el Municipio solicitó se aclarara y reconsiderada la orden emitida. Transcurrido el término para que el TPI se expresara, no lo hizo, por lo cual se entendió su solicitud rechazada. Así las cosas, el Municipio presentó su recurso.

Por su parte, Río Construction solicitó se denegare la expedición del auto solicitado. Resolvemos, con el beneficio de los escritos y del derecho aplicable.

**II**

La Autoridad de Carreteras y Transportación (la *"Autoridad"*) llevó a cabo una subasta para el diseño y construcción de una de las fases del proyecto de construcción de la carretera PR-66, AC-006609, mejor conocido como la Ruta-66. El proyecto ubica por partes iguales, entre los límites territoriales de los Municipios de Carolina y Canóvanas. Río Construction licitó para la subasta y fue agraciado con la *buena pro*. El 22 de julio de 1998, se firmó el contrato de construcción, luego de lo cual, se comenzó la construcción del proyecto de acuerdo a la Orden de Comienzo emitida por la Autoridad.

Posteriormente, el 26 de abril de 1999, el Director de Presupuesto y Finanzas del Municipio, Sr. Edwin Lebrón González, cursó una comunicación a Río Construction requiriéndole el pago de $1,459,758.00 en concepto de arbitrios de construcción sobre el proyecto AC-006609, incluyendo penalidades e intereses conforme a la Ordenanza Núm. 136, Serie 1992-93-140 y en la Ley Núm. 199 aprobada el 6 de septiembre de 1996 (Ley Núm. 199). Conforme disponía la ordenanza, los arbitrios de construcción se pagarían antes del comienzo del proyecto, por lo cual, a su juicio, la deuda estaba vencida, era líquida y exigible.

Así las cosas, el 14 de mayo de 1999, Río Construction presentó demanda sobre Sentencia Declaratoria contra el Municipio, Caso Civil, Núm. FAC99-0253. Solicitó se declarara que no procedía el cobro de arbitrios en proyectos de la Autoridad en consideración a la Ley Núm. 199, enmendada por la Ley Núm. 81 de 30 de agosto de 1991, mejor conocida como la Ley de Municipios Autónomos, 21 L.P.R.A. § 4001-4958. Alegó que

conforme al estatuto toda construcción que no requería permiso de la Administración de Reglamentos y Permisos (ARPE) estaba exento de pagar arbitrios de construcción. Además, alegó que la construcción del proyecto de la Ruta-66 no requirió permiso de ARPE, por lo que no procedía el pago de arbitrios de construcción.

Así las cosas, el 2 de junio de 1999, nuestro Tribunal Supremo en *Colón y otros v. J.C.A.*, 148 D.P.R. 434 (1999), paralizó la obra, aproximadamente once (11) meses después de haber comenzado. En consideración a lo cual, la Autoridad canceló el proyecto que estaba completado en un 50%.

Por su parte, el 27 de agosto de 1999, el Municipio contestó la demanda sobre sentencia declaratoria, presentó varias defensas afirmativas y una reconvención contra Río Construction.

Mientras tanto, el 16 de marzo de 2001, nuestro Tribunal Supremo resolvió en *Río Construction v. Municipio de Carolina, Per Curiam* de 16 de marzo de 2001, **2001 J.T.S. 39**, que de conformidad con la Ley Núm. 199, que modificó la Ley de Municipios Autónomos, la persona natural o jurídica que sea contratada por una entidad gubernamental para realizar una obra de construcción, tiene que pagar el correspondiente arbitrio de construcción municipal, aunque la entidad gubernamental contratante no tenga que obtener un permiso de ARPE. Devolvió el caso para la continuación de los procedimientos.

Luego de una serie de trámites procesales, relacionadas con la demanda sobre sentencia declaratoria presentada por Río Construction, las partes sometieron el 29 de septiembre de 2003, una estipulación o acuerdo transaccional, el que transcribimos a continuación:

*"1. Las partes de epígrafe han llegado a un acuerdo parcial que dispondría finalmente de una porción de la controversia que nos ocupa, referente a los arbitrios de construcción por el proyecto de la Ruta 66.*

*2. El acuerdo parcial entre las partes consiste en que Río está dispuesto a pagar al Municipio la cantidad de $25,177.98 por concepto de arbitrios de construcción sobre las partidas denominadas "Bid Item Number 1 – Project Management" y "Bid Item Number 3 – Construction Administration".*

*3. En adición, Río pagará al Municipio la cantidad de $23,185.00 por concepto de un balance pendiente de la deuda reconocida por ellos. El Municipio recibirá de Río la cantidad total de $48,362.98 a ser pagada el 25 de octubre de 2003, 30 días después del 25 de septiembre de 2003, fecha en que se materializó el mencionado acuerdo. Con el pago de esta cantidad se pondría fin a la controversia de arbitrios respecto a la porción ejecutada de la obra según determina la Certificación 26 de la Autoridad de Carreteras para el proyecto de la Ruta-66, exceptuando las partidas denominadas "work stoppages", "bid Item Numbers 44-45-46" de la misma certificación y la porción no ejecutada de la obra.*

*4. Las partes solicitan a este Tribunal que dicte Sentencia Parcial final sobre el acuerdo mencionado en el acápite 3.*

*5. El Municipio de Carolina dio su aprobación al mencionado acuerdo.*

*6. Las partes entienden que los restantes asuntos pendientes ante la consideración de este tribunal son estrictamente de derecho, los cuales no requieren para su solución una vista evidenciaria con la presentación de prueba testifical. Lo que restaría por dilucidar es la procedencia o no del cobro del arbitrio de construcción por la porción no ejecutada de la obra y la procedencia o no de incluir las partidas denominadas como "work stoppages," "bid Item Numbers 44-45-46" de la Certificación 26 antes mencionada, como partidas sujetas a tributación, por la cantidad de $5,948,377.85.*

*7. Estos son asuntos que pueden ser resueltos por este Tribunal mediante los Memorandos de Derecho ya sometidos por las partes.*

*8. Las partes estipulan que Río Construction Corporation recibió de la Autoridad de Carreteras y Transportación un pago por la cantidad de $3,500,000.00 como compensación por daños sufridos como consecuencia de la cancelación del contrato de la Ruta 66."*

El acuerdo fue acogido mediante **Sentencia Parcial Final** dictada el 15 de enero de 2004. A tenor con lo estipulado, no existía controversia alguna respecto a arbitrios a pagar sobre la porción ejecutada del proyecto y las partidas *"Bid Item Number 1 – Project Management"* y *"Bid Item Number 3 – Construction Administration"*. La única controversia que restaba por dilucidar, era si procedía o no el cobro del arbitrio de construcción por la porción no ejecutada de la obra y si procedía o no incluir las partidas denominadas como *"work stoppages"* y *"bid Item Numbers 44-45-46"* de la Certificación 26 de la Autoridad para el proyecto de la Ruta 66.

En consideración a los memorandos de derecho presentados por las partes el 29 de enero de 2004, archivada en los autos copia de su notificación el 5 de febrero de 2004, el TPI emitió **Sentencia**, en la que, en lo pertinente, dispuso:

*"**POR TODO LO CUAL** y a tenor con las conclusiones de derecho esbozadas anteriormente, este Tribunal ordena que:*

*1. Río Construction Corp. tiene que cumplir con el acuerdo transaccional sometido ante este foro el 29 de septiembre de 2003, y que obliga a dicha compañía a satisfacer al Municipio de Carolina la cantidad de $48,262.98. Esta suma total está compuesta por $25,177.98 correspondiente a las partidas denominadas. 'Project Management y Construction Administration'; en adición a la cantidad de $23,185.00 por concepto de una deuda reconocida por la mencionada constructora. (Refiérase a Sentencia Parcial de 15 de enero de 2004).*

*2. Las partidas descritas como "work stoppages" no estructuran una orden de cambio que produzca variaciones ni aplicaciones a la obra de construcción. Estas no son parte del costo total del proyecto PR-66 y por lo tanto no serán consideradas para el pago de arbitrios correspondientes.*

*3. No obstante, la porción no completada de la obra sí forma parte del proyecto en su totalidad y Río debe pagar arbitrios de construcción como lo exige la Ley de Municipios Autónomos, supra. Es decir, tomando como base tributaria el costo total de la obra previo al comienzo de ésta ($55,954,000.00) y luego restando las exenciones establecidas por ley ($5,023,340.00), además de las partidas de "work stoppages" ($5,948,377.85) que fueron tomadas en consideración indebidamente en el contrato original.*

*Una vez se restan las cantidades mencionadas, se obtiene entonces la suma tributable ($44,982,282.15) según el costo total de la obra. Luego se contabiliza el 25% de la misma, determinándose de esta manera la cantidad total de arbitrios ($1,124,557.05), se divide entre dos (2) para obtener los arbitrios que proporcionalmente corresponden a la fase pertinente al Municipio de Carolina ($562,278.53) y finalmente se restaría la cantidad satisfecha por Río de la deuda contributiva municipal reconocida ($310,484.00) obteniendo un resultado final de $251,794.53.*

*Así las cosas, Río Construction Corp. tiene la obligación impuesta por ley de pagar al Municipio de Carolina la cantidad de $251,794.52 en arbitrios de construcción correspondiente a la porción no ejecutada del proyecto conocido como Corredor del Este (antes Ruta PR 66)."*

Inconforme, el 20 de febrero de 2004, el Municipio solicitó reconsideración. El 26 de febrero de 2004, la reconsideración fue declarada no ha lugar.

Antes de que el TPI emitiera la **Sentencia Parcial Final** el 15 de enero de 2004, archivada en los autos copia de su notificación el 21 de enero, en ese mismo día, el Municipio solicitó se dictara sentencia parcial final y se le concediera permiso para embargar hasta la cantidad de $48,362.98 estipulada y adeudada por Río Construction. El 15 de enero de 2004, en consideración al acuerdo firmado por las partes el 26 de septiembre de 2003, el TPI le ordenó al Secretario del Tribunal expedir el correspondiente mandamiento de embargo dirigido al Alguacil del Tribunal. Relevó al Municipio de prestar fianza para garantizar los daños que se le pudieran causar a Río Construction con el embargo. El 23 de enero de 2004, el Secretario del Tribunal expidió bajo su firma y sello el correspondiente mandamiento requiriendo del señor Alguacil, embargar y vender en pública subasta cualquier propiedad de Río Construction, necesaria para satisfacer las sumas reclamadas por el Municipio.

El embargo fue tramitado por el Municipio en la Autoridad de Carreteras. Conforme a copia de la certificación enviada por Río Construction, el 5 de febrero de 2004 y a virtud del embargo ordenado por el TPI, la Autoridad retuvo la cantidad de $48,572.12 de la Certificación #39 del Proyecto AC-000526, obra realizada por Río Construction. Durante el trámite del embargo, Río Construction había expedido un cheque por $48,572.12. Ante el embargo efectuado, y para evitar doble pago, Río Construction optó por ordenar un *"stop payment"* del cheque girado a favor del Municipio.

Por entender que el cobro de lo adeudado por Río Construction en concepto de arbitrios de construcción se encontraba en peligro de cobrarse, el 1ro. de marzo de 2004, es decir, luego de dictarse la sentencia del 29 de enero de 2004, el Municipio presentó escrito titulado **Solicitud de Embargo en Cumplimiento de Sentencia** a los fines de asegurar el cumplimiento de la referida sentencia. Expresó no estar de acuerdo con los cómputos efectuados por el TPI, en cuanto al balance del arbitrio a pagar por Río Construction; no obstante, solicitaba se asegurase la sentencia por la cantidad que el TPI determinó correcta. Como hemos informado, su solicitud fue declarada **no ha lugar** mediante **Orden** de 9 de marzo de 2004, archivada en los autos copia de su notificación el 12 de ese mes y año.

Antes de que el TPI se expresara sobre la solicitud de embargo, el 5 de marzo de 2004, el Municipio solicitó del TPI que extendiera la cantidad del embargo original de $48,362.98, referente al acuerdo estipulado entre las partes, hasta la cantidad total adjudicada en la sentencia del 29 de enero de 2004. A ello se opuso Río Construction. Mediante **Orden** de 18 de marzo de 2004, y en atención a la oposición de Río Construction, el TPI declaró no ha lugar a la ampliación del embargo. Por otro lado, aclaró que el embargo autorizado en el referido dictamen fue por la suma determinada en la **Sentencia Parcial Final**, es decir, $48,572.12, resultado del acuerdo de estipulación.

Como hemos informado, el 19 de marzo de 2004, el Municipio solicitó se aclarara y se reconsiderara la orden emitida. Transcurrido el término para que el TPI se expresara, no lo hizo, por lo cual se entendió su solicitud rechazada.

Inconforme, el Municipio le imputa al TPI haber errado al denegar ampliar el embargo solicitado hasta la cantidad determinada en la sentencia del 29 de enero de 2004.

## III

### A. El embargo preventivo

El embargo *"es una interdicción jurídica èn el patrimonio del deudor, decretada a petición ex parte del acreedor reclamante. Uno de sus efectos procesales es el de sujetar o adscribir los bienes embargados al*

*cumplimiento de la obligación o reclamación en el proceso principal, es decir, asegurar la efectividad de la sentencia que haya de dictarse en el caso de prosperar la acción ejercitada. Como medida cautelar o asegurativa, su vida o eficacia depende de la acción entablada."* Alum Torres v. Campos del Toro, 89 D.P.R. 305, 321 (1963).

El propósito del mecanismo de embargo es preservar los bienes del deudor e impedir su traspaso y ocultación de manera que quien reclame un derecho contra éste, pueda ejecutar satisfactoriamente un mandato judicial. *García v. The Commonwealth Ins. Co.*, 118 D.P.R. 380, 387 (1987); *Vda. de Galindo v. Cano,* 108 D.P.R. 277, 280 (1979).

La Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece lo siguiente respecto a los remedios provisionales:

*"Regla 56.1. Principios generales*

***En todo pleito antes o después de sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia.*** *El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso.* ***En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial."*** [Énfasis Suplido].

Véase: *Vargas v. González*, 149 D.P.R. 859, 865 (1999)

La Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, reconocen el embargo como uno de los remedios que puede dictar un tribunal para asegurar la efectividad de una sentencia. *Rivera Rodríguez & Co. v. Lee Stowell, Taylor*, 133 D.P.R. 881, 894 (1993). El objetivo de la anotación de embargo es el proteger la efectividad de los dictámenes judiciales y el de mantener el *status quo* existente al momento de iniciarse del pleito. *Id.* Los criterios que tendrán que tomar los tribunales en consideración al momento de conceder o denegar la anotación de un embargo preventivo son: (1) que sean provisionales; (2) que tengan el propósito de asegurar la efectividad de la sentencia que en su día se pueda dictar, y (3) que se tomen en consideración los *intereses de todas las partes*, según lo requiera la justicia sustancial y todas las partes. J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, **Publicaciones J.T.S.**, Tomo II, 2000, pág. 934; *Freeman v. Tribunal Superior*, 92 D.P.R. 1, 25 (1965).

Por su parte, la Regla 56.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, señala que *"[n]o se concederá, modificará o anulará, ni se tomará providencia alguna sobre un remedio provisional, sin notificar a la parte adversa y sin celebrar una vista."* Véase: *Ramos de Szendrey v. Colón Figueroa*, Opinión de 6 de marzo de 2001, **2001 J.T.S. 33**, a la pág. 957. Para que la vista satisfaga los requisitos del debido proceso de ley debe cumplirse con: 1) notificación adecuada del proceso; 2) proceso ante un juez imparcial; 3) oportunidad de ser oído; 4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; 5) tener asistencia de abogado, y 6) que la decisión se base en el récord. *Rivera Rodríguez & Co.,* 133 D.P.R. a la pág. 889.

Además, los tribunales deberán exigir la prestación de una fianza. *Ramos de Szendrey*, **2001 J.T.S. 33**, a la pág. 957; *Rivera Rodríguez & Co.,* 133 D.P.R. a la pág. 896; Regla 56.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. No obstante, lo anteriormente expuesto la Regla 56.3 de Procedimiento Civil, establece las circunstancias bajo las cuales un tribunal puede conceder un remedio provisional sin la prestación de fianza:

*"[...]*

*(1) Si apareciere de documentos públicos o privados, según definidos por ley, firmados ante una persona autorizada para administrar juramento, que la obligación es legalmente exigible; o*

*(2) Cuando se tratare de un litigante insolvente que estuviere expresamente exceptuado por ley para el pago de aranceles y derechos de radicación y a juicio del tribunal la demanda adujere hechos suficientes para establecer una causa de acción cuya probabilidad de triunfo fuere evidente o pudiere demostrarse, y hubiere motivos fundados para temer, previa vista al efecto, que de no obtenerse inmediatamente dicho remedio provisional, la sentencia que pudiera obtenerse resultaría académica porque no habría bienes sobre los cuales ejecutarla, o*

*(3) Si se gestionare el remedio después de la sentencia.*

*[...]".*

En el caso ante nuestra consideración, el Municipio alega que el TPI erró al denegar la ampliación del embargo hasta la cantidad de $251,794.52 que determinó venía obligada Río Construction a pagar en arbitrios de construcción correspondiente a la porción no ejecutada del proyecto conocido como Corredor del Este (antes Ruta PR-66).

No obstante, antes de emitir su dictamen, el TPI no celebró una vista antes de denegar el embargo solicitado por el Municipio, en contravención a las disposiciones de la referida Regla 56.2 de Procedimiento Civil y del debido proceso de ley. La celebración de una vista previa a la autorización de un embargo preventivo le permite a las partes, a sus contables y peritos, exponer los posibles daños que se le ocasionarían de permitir el embargo, y protege de igual manera, los intereses propietarios de la parte contra quien se solicita.

En consideración a lo expuesto, se expide el auto solicitado y se revoca la Orden recurrida. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Carolina, para que celebre una vista acorde con los requisitos mínimos del debido proceso de ley a los fines de determinar si procede el embargo en aseguramiento de sentencia solicitado por el Municipio.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General